**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **TRAVELERS CASUALTY AND SURETY** ) | |
| **COMPANY OF AMERICA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 07-0347-WS-B** |
| ) | |
| **EAST BEACH DEVELOPMENT,** ) | |
| **LLC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on a welter of pending motions, including Defendant Bagby & Russell Electric Company, Inc.'s Motion to Sever and Dismiss or in the Alternative to Stay (doc. 28); Defendant All-South Subcontractors Co., Inc.'s Motion to Dismiss, or in the Alternative, Motion to Stay (doc. 34); Defendant Mansfield Industrial, Inc.'s Motion to Sever and Dismiss, or in the Alternative, Motion to Stay (doc. 51); and Defendant East Beach Development, LLC's Motion to Dismiss or Alternatively to Stay (doc. 64).[1] These overlapping motions, each of which concerns precisely the same legal issue, have been briefed and are ripe for disposition at this time.

---

[1]      Also pending is Plaintiff's Motion for Oral Argument (doc. 60), wherein Travelers argues that oral argument is warranted because of the multiplicity of motions, the confusion created by the four inter-related state-court actions, and the significance of the pending motions. Upon careful review of the parties' submissions, the undersigned finds that oral argument would not be of substantial assistance in resolving the pending motions. Despite the numerosity of the motions, they all center on the same legal issue, to-wit: whether abstention from these declaratory judgment proceedings is appropriate. This question has been briefed and rebriefed many times over in the span of the 11 briefs the parties have devoted to it; therefore, the Court perceives no substantial benefit to having those same arguments be reiterated a twelfth time in oral argument. Nor does the Court perceive any serious risk of confusion with respect to the state-court actions, given that the briefs delineate the nature and subject matter of those lawsuits at least as effectively as oral argument could. And the importance of the issues being litigated does not, in and of itself, necessitate oral argument. In its discretion, the Court **denies** the Motion for Oral Argument pursuant to Local Rule 7.3, which provides that "the court may in its discretion rule on any motion without oral argument." *Id.*

I.      **Background.**

   A.      *The Travelers Declaratory Judgment Litigation.*

   This litigation arises from the non-payment of a number of subcontractors who provided labor, materials and/or equipment in connection with two unrelated condominium development projects, and those subcontractors' subsequent attempts to obtain payment from a surety, the developer, the property owners, and others.  Plaintiff Travelers Casualty and Surety Company of America, Inc., initiated this federal action on May 15, 2007 by filing a Complaint (doc. 1) against Each Beach Development, LLC and Regions Bank alleging theories of declaratory judgment and indemnity and reimbursement.  The First Amended Complaint (doc. 7) that is the operative pleading in this action was filed on May 30, 2007, and expands the scope of the litigation considerably.

   In its present, amended configuration, this action involves claims against nine defendants, to-wit: East Beach; A-1 Glass Services, Inc; All-South Subcontractors, Inc.; Alpha Insulation & Waterproofing Co.; Bagby & Russell Electric Company, Inc.; Jennings Service Company, Inc.; Mansfield Industrial, Inc.; Thrasher Waterproofing Corp.; and Triple A Fire Protection, Inc.[2] The First Amended Complaint reflects that, on or about April 7, 2004, Travelers, as surety, issued a Performance and Payment Bond in the penal sum of $9,120,048 for a project known as Lighthouse Condominiums and being developed by defendant East Beach in Gulf Shores, Alabama.  Under this bond, Travelers assured performance of payment obligations to claimants who had direct contracts with nonparty Coastal Builders, Inc., a general contractor on the project, to furnish labor, materials or equipment on the Lighthouse development.  Travelers' position is that so-called "Owner Direct Contractors," or claimants who contracted directly with East Beach (rather than Coastal), fall outside the ambit of the Lighthouse Payment Bond and therefore cannot validly obtain reimbursement from Travelers.  According to the First Amended Complaint, defendants A-1 Glass, All-South, Bagby, Jennings, Mansfield, Thrasher and Triple A are all Owner Direct Contractors as to whom Travelers seeks a declaration that it has no

---

   [2]      Three other defendants were named in the First Amended Complaint, but have since been dismissed per agreement of the parties.  Specifically, defendants Simpson Commercial Contracting, Inc.; Kone, Inc.; and Regions Bank have all been dismissed from this action, and there are no pending claims against any of them.  (*See* docs. 39, 40, 50.)

obligation to provide compensation for unpaid invoices accrued on the Lighthouse project.

The First Amended Complaint does not stop there; rather, Travelers also seeks a similar set of declarations concerning a second condominium construction project being developed and built by different entities.  In particular, the First Amended Complaint reflects that, on or about September 2, 2004, Travelers issued a Performance and Payment Bond in the penal sum of $15,226,382 for a project known as San Carlos Condominiums and being developed by nonparty Holiday Development, LLC in Orange Beach, Alabama.[3]  Under this payment bond, Travelers assured performance of payment obligations to claimants who had direct contracts with nonparty Coastal Builders (which was also a general contractor of that project), to furnish labor, materials or equipment for use in the San Carlos development.  Travelers' position is that Owner Direct Contractors, or claimants who contracted directly with Holiday (rather than Coastal), are ineligible to assert claims under the San Carlos payment bond.  According to the First Amended Complaint, defendants Alpha and Jennings were both Owner Direct Contractors as to whom Travelers requests a declaration in this action that it has no obligation to reimburse them for unpaid invoices pertaining to the San Carlos project.  Travelers has not named Holiday as a defendant in this action, nor has it explained why it elected to combine claims for declaratory relief relating to two different projects, resulting in a proliferation of defendants and joining in a single declaratory judgment action what appear to be two unrelated sets of facts with only one common subcontractor.

In addition to the declaratory judgment claims asserted against all defendants, the First Amended Complaint also interposes a cause of action against East Beach for indemnity and reimbursement because Travelers contends that it erroneously paid $150,090.25 to A-1 Glass under the Lighthouse Payment Bond based on inaccurate information, when the truth was that A-1 Glass was an Owner Direct Contractor who was therefore ineligible to make a claim under the Lighthouse Payment Bond.  On that basis, Travelers seeks "judgment against East Beach in the amount of $150,090.25."  (First Amended Complaint (doc. 7), at 15.)

_____

[3]      In briefing the Motions to Dismiss, Travelers takes the position that "[b]oth projects were developed by East Beach Development, LLC."  (Doc. 52, at 2.)  This allegation is contrary to Travelers' own pleadings, and was made in error, as Travelers now concedes.

Of the nine current defendants, four (Bagby, All-South, Mansfield and East Beach) have filed motions to dismiss asking the Court to abstain from deciding Travelers' claims against them given the pendency of parallel state-court litigation. A fifth defendant, Triple A Fire Protection, has brought a Counterclaim in this action against Travelers seeking payment on the Payment Bond for Triple A's work on the Lighthouse project in the amount of $51,617.70, as well as Cross-claims against East Beach for breach of contract and work and labor performed, in connection with the same unpaid amounts. (*See* doc. 32.) Two of the remaining four defendants (Jennings and Thrasher) have filed Answers denying Travelers' right to declaratory judgment against them, but not interjecting substantive claims against Travelers for payment on the bond. (*See* docs. 44, 88.) And the two final defendants (A-1 and Alpha) have not answered or otherwise appeared in this action to date, even though Travelers' proofs of service reflect that service of process was perfected back in June 2007.[4]

**B.      The State-Court Litigation.**

Unfortunately, this declaratory judgment action is neither the first nor the only lawsuit involving these parties and these legal issues. The briefs on the various motions to dismiss reveal that there are no fewer than four actions pending in the Circuit Court of Baldwin County, Alabama, between certain defendant subcontractors herein and Travelers in which the subcontractors are suing Travelers for payment on the Lighthouse Payment Bond.[5] The most

---

[4]       In particular, plaintiff filed U.S. Postal Service return receipts (docs. 15, 17) reflecting that both A-1 and Alpha were served with process by certified mail on June 25, 2007. Despite the lack of any activity by those two defendants in the last four months, Travelers has failed to initiate default proceedings against them. Plaintiff is hereby **ordered**, on or before **November 21, 2007**, to **show cause** why it has not sought entry of default and default judgment against defendants A-1 and Alpha for failure to answer or otherwise respond to the First Amended Complaint within the time frame specified by the Federal Rules of Civil Procedure.

[5]       The briefs also allude to various motions filed in state court to consolidate those actions and further assert that several such motions had August 2007 hearing dates, such that they may have been ruled on by now. However, no party has apprised the Court of the current status of those motions or notified the Court of any state-court ruling that may have issued. Also, there is some indication in the briefs that multiple state-court actions were slated for trial in October 2007 (the *Bagby* Action) or November 2007 (the *Mansfield* Action), yet here again the parties have not updated the Court as to any ensuing developments. Therefore, the Court will assume for purposes of this Order that there remain four distinct state-court actions, as further set

-4-

complete information the undersigned has been able to glean from the parties' briefs concerning each of those other actions is set forth below.

On or about April 25, 2007, defendant Bagby filed a lawsuit in Baldwin County Circuit Court captioned *Bagby & Russell v. East Beach Development, LLC et al.*, Civil Action Number CV-07-000299.00 (the "*Bagby* Action"). In that action, Bagby sued East Beach, Travelers, the Lighthouse Condominium Property Owners Association, Inc., and various individual condominium owners and their mortgagees. The gravamen of the *Bagby* Action is that Bagby has not been paid for electrical work performed on the Lighthouse project over a two and a half year period in the total amount of $475,000.65. Bagby seeks reimbursement of these charges through several channels, including payment by East Beach, payment by Travelers under the Lighthouse Payment Bond, or enforcement of its mechanics lien against the Association and individual unit owners. Bagby's position is that "[w]hether Travelers owes an obligation under the payment bond to pay the sums due Bagby & Russell is a primary issue in the action pending in the Circuit Court of Baldwin County." (Doc. 28, at 4.) The *Bagby* Action preceded Travelers' claims against Bagby in this forum by more than a month.[6]

A second lawsuit pending in Baldwin County Circuit Court is styled *Lighthouse Condominium Association, Inc. v. East Beach Development, LLC, et al.*, Civil Action Number CV-2007-256 (the "*Lighthouse* Action"). The *Lighthouse* Action was filed by the Association on or about June 15, 2007, and asserts various claims pertaining to alleged construction defects and deficiencies in the Lighthouse project. All-South was named as a defendant in the *Lighthouse* Action; however, on July 26, 2007, All-South brought certain counterclaims, cross-claims and third-party claims in that case, seeking to recover an unpaid balance of $74,835.50 for goods, labor and services that it furnished in connection with the Lighthouse project. Much like Bagby in the *Bagby* Action, All-South seeks to be made whole through any of several

forth herein, and that none of those actions has proceeded to final judgment.

[6]     Although the parties' briefing on this point is incomplete, it appears that defendant East Beach has filed a Cross-claim against Travelers in the *Bagby* Action, alleging that Travelers is obligated to pay claims for amounts due on the construction of the Lighthouse project. The briefs do not reflect whether East Beach's Cross-claim against Travelers predated or succeeded Travelers' filing of the First Amended Complaint herein.

means, including claims against the Association and various individual owners and mortgagees, claims against Each Beach and Coastal Builders, and third-party claims against Travelers for payment under the Lighthouse Payment Bond.

Third, on May 17, 2007, Mansfield filed a lawsuit in Baldwin County Circuit Court captioned *Mansfield Industrial, Inc. v. East Beach Development, LLC, et al.*, Case No. CV-2007-000366 (the "*Mansfield* Action"). Mansfield has sued East Beach, the Association, individual unit owners, Coastal Builders and Travelers, to recover an unpaid balance of approximately $450,018.52 for work that it performed on the Lighthouse project, including such tasks as painting, caulking and finishing sheet rock. The *Mansfield* Action includes a direct claim by Mansfield against Travelers seeking payment under the Lighthouse Payment Bond.

The available information on the fourth lawsuit is somewhat sketchier. From the briefs, it appears that on July 17, 2007, Jennings filed a civil lawsuit in Baldwin County Circuit Court that is apparently similar in substance and tenor to the *Bagby*, *Lighthouse*, and *Mansfield* Actions. This development is perhaps surprising because Jennings has not filed a motion to dismiss or stay in this case on the basis of its pending state-court lawsuit; rather, on September 24, 2007, Jennings filed an Answer (doc. 88), such that Jennings appears fully willing to proceed in federal court as to the payment bond issue. It is unclear whether Travelers' claims against Jennings herein overlap or duplicate any claims that Jennings might have raised against Travelers in its state-court action. That information is not before the Court at this time and therefore cannot be considered for purposes of addressing the pending motions.

Considered in the aggregate, this state-court litigation reveals that, just as Travelers seeks a declaration in federal court that owes no obligation to Bagby, All-South or Mansfield under the Lighthouse Performance Bond, so too do Bagby, All-South and Mansfield seek recovery in state court from Travelers under the Lighthouse Payment Bond. Thus, both this Court and the Baldwin County Circuit Court have been separately tasked with reaching a determination as to precisely the same issue, to-wit: whether the Lighthouse Payment Bond applies to unpaid amounts charged by Bagby, All-South and Mansfield for work they performed on the Lighthouse project.

### C.    The Motions to Dismiss.

Bagby, All-South, Mansfield, and East Beach have all filed similar motions urging this

Court to abstain from hearing and deciding Travelers' declaratory judgment claims as to them. Their position is that the legal and factual issues raised by Travelers' claims against them in this lawsuit (namely, whether they are entitled to compensation via the Payment Bond issued by Travelers for the Lighthouse project) are identical to those pending in underlying substantive state-court proceedings, such that this Court should exercise its discretion to abstain from hearing this aspect of the dispute. Travelers opposes all of these requests, reasoning that the relevant factors militate in favor of having this Court decide the declaratory judgment issues in a single proceeding, rather than deferring to fragmented state-court litigation.[7]

## II.     Analysis.

### A.     Governing Legal Standard.

Travelers' declaratory judgment claims against Bagby, All-South, Mansfield and East Beach were brought pursuant to 28 U.S.C. §§ 2201 *et seq.*, seeking a judicial declaration that it "has no obligation, under the Lighthouse Bonds, the San Carlos Bonds, or otherwise, with respect to the claims or liens asserted by Lighthouse Owner Direct Contractors or the San Carlos Owner Direct Contractors," and that it "has no further obligation under the Lighthouse Payment Bond or the San Carlos Bonds except as to those claims asserted by valid 'Claimants.'" (First Amended Complaint (doc. 7), at 15.) It is well-settled that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." 515 U.S. at 287 (citations omitted). As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir.

---

[7]     In briefing these issues, the parties eschew any discussion of the "first-filed rule" and how it might impact the analysis. The parties having failed to raise this doctrine, the Court will not scrutinize it *sua sponte* in evaluating the various pending Motions to Dismiss.

2005).[8]  "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum."  *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000).

Consistent with the foregoing, it has long been recognized in this Circuit that a district court has discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).[9]  In *Ameritas*, the Eleventh Circuit reaffirmed *Ven-Fuel* and furnished district courts with guidance in how to wield their *Wilton/Brillhart* discretion under the Declaratory Judgment Act where there are parallel state proceedings.  The *Ameritas* court emphasized that district courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action when confronted with a parallel state action.  411 F.3d at 1330-31.[10] To assist district courts in this endeavor, *Ameritas* promulgated a non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii)

---

[8]         *See also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324-25 (11th Cir. 2005) (explaining that district court's exercise of authority to proceed in declaratory judgment action is reviewed for abuse of discretion and that there is a zone of choice within which trial courts may go either way); *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ... vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action.").

[9]         *Ven-Fuel* is in line with extant Supreme Court jurisprudence.  More than 60 years ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).  The *Brillhart* Court admonished lower courts scrupulously to avoid what it termed "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation."  *Id.*

[10]        These considerations have been echoed by other appellate courts.  *See, e.g., Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (federal court "should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); *Mitcheson v. Harris*, 955 F.2d 235, 237-39 (4th Cir. 1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as pragmatic concerns of efficiency and comity).

-8-

whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action.  *See id.* at 1331; *see also Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1238-44 (S.D. Ala. 2006) (applying *Ameritas* guideposts in context of declaratory judgment action filed by insurer after entry of state court judgment against putative insured).

In *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit reiterated that the decision to hear a declaratory judgment action is discretionary, that there can be no rigid or mechanical application of that discretion, and that a vast spectrum of considerations is available to district courts deciding whether to hear such an action.  *See id.* at 1135, 1137-38.  For that reason, the Court will apply the *Ameritas* factors as mere "guideposts," rather than as an exhaustive, binding set of mandatory considerations.[11]

**B.**   ***Analysis of Motions by Bagby, All-South and Mansfield.***

**1.**   *Whether the* Ameritas *Guideposts are Properly Considered.*

As an initial matter, Travelers questions the movants' premise that their Motions to

---

[11]   All parties appear to be in agreement that the *Wilton*/*Brillhart* discretion analysis should be given primacy here.  This is so, despite the fact that Travelers has also asserted a claim for damages against East Beach, such that its causes of action include both declaratory judgment claims (as to which the exercise of jurisdiction is discretionary) and claims for compensatory damages (as to which the exercise of jurisdiction is ordinarily mandatory).  There is conflicting authority as to whether and when the *Ameritas* framework is applicable if claims for declaratory judgment are joined with claims for damages.  *See Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1235-38 (S.D. Ala. 2006) (collecting and analyzing authorities).  The Court need not address that question here, however, given that neither movants nor nonmovant have suggested that the existence of coercive claims brought side-by-side with declaratory judgment causes of action should affect the analysis here.  Nonetheless, inasmuch as East Beach may be situated differently from the subcontractor movants in several respects, the Court will examine East Beach's Motion to Dismiss separately from the others.

Dismiss should be examined through the prism of the *Ameritas* guideposts.  In this regard, Travelers maintains that the Baldwin County actions are not properly viewed as "parallel" to this case, that this action is distinguishable from the *Ameritas* paradigm because the state-court actions cannot fully resolve the issues, and that there are no genuine issues of material fact in the claims joined in this declaratory judgment action.  None of these objections constitutes a persuasive reason not to apply *Ameritas*.

With respect to the "parallel" question, Travelers maintains that the motions to dismiss "should be denied because the cases are not 'parallel actions,' thus there is no problem with the actions proceeding concurrently."  (Doc. 52, at 6.)  In this regard, Travelers describes the state-court actions as "primarily breach of contract actions against East Beach, which seek to establish lien rights against the property now owned by the individual unit owners" (*id.*), and which have nothing to do with Travelers' request for a declaratory judgment that the Payment Bonds do not extend to Bagby, All-South and Mansfield.  The problem with this line of reasoning is that Travelers' characterization of the state-court litigation is both contorted and inaccurate.[12]  There is no question that Bagby, All-South and Mansfield are suing East Beach, the Association, and others in the state-court actions on theories of breach of contract and lien rights.  But Travelers ignores the fact that Bagby, All-South and Mansfield have also brought claims against Travelers in state court seeking to recover on the Lighthouse Payment Bond.  Those claims, which have been fully and properly joined in the state-court proceedings, encompass precisely the same issue that Travelers has joined in federal court against those same subcontractors via its declaratory judgment cause of action.  Simply put, Bagby, All-South and Mansfield have all asked the state court to find that Travelers is responsible for paying those subcontractors on the Lighthouse

_____

[12]     This problem surfaces repeatedly in Travelers' briefing.  For example, Travelers asserts in an unauthorized sur-reply brief that "it is *theoretically* possible that its obligations to Bagby, Mansfield, All South, and Jennings could be resolved in their respective state court actions."  (Doc. 59, at 3-4.)  This position borders on the absurd.  Each of Bagby, Mansfield, and All-South has sued Travelers in the state-court actions for recovery on the Lighthouse Payment Bond.  Far from being a mere "theoretical possibility," it is a certainty that any final disposition of the state-court actions will entail a complete resolution of Travelers' liability (if any) to those subcontractors on the Payment Bond.  Travelers' steadfast refusal to recognize this obvious fact serves only to undermine its credibility.

-10-

project pursuant to the Payment Bond.  Travelers has asked this Court to find that Travelers is not responsible for any such payments.  Under any reasonable construction of the term, the instant proceedings and the state-court litigation are "parallel."  Travelers' argument to the contrary is without merit, given that precisely the same legal and factual issues are presented in both sets of proceedings between Travelers, on the one hand, and Bagby, All-South and Mansfield, on the other.  Given the presence of identical issues before both the state court and the federal court involving the same parties, and given the discretionary nature of Travelers' declaratory judgment claims, the pending Motions to Dismiss cry out for an *Ameritas* type of analysis.[13]

Equally unpersuasive is Travelers' attempt to sidestep the *Ameritas* framework by arguing that the state-court proceedings involve incomplete sets of parties and issues, while this federal action comprehensively includes all parties and issues.  (*See* doc. 52, at 7-8.)  Whatever the merits of Travelers' characterization of the inclusiveness (or lack thereof) of the state and federal proceedings, that argument is not properly framed as an argument <u>against</u> examining the *Ameritas* criteria at all.  To the contrary, this very question is embodied in the *Ameritas* guidepost that courts should examine "whether the judgment in the federal declaratory action would settle the controversy."  *Ameritas*, 411 F.3d at 1331.  Thus, rather than constituting a valid basis for refraining from performing an *Ameritas* analysis, Travelers' argument concerning whether the federal action would fully and completely resolve the issues is properly subsumed within the *Ameritas* framework.

---

[13]       In that same vein, the Court rejects Travelers' contention that "[t]he federal action can be decided completely and independently of the state court actions, as the federal action is simply a review of the contractual relationships at stake here, not a review of any of the underlying facts of the separate state court action brought by movants."  (Doc. 52, at 7.)  By all appearances, no determination on Travelers' declaratory judgment claims can be reached without factual findings as to (a) the contractual terms of the Payment Bond; and (b) whether each particular subcontractor's relationship and course of dealings with Coastal and/or East Beach were such that the subcontractor fell within those contractual parameters for eligibility to make claims on the Payment Bond.  Travelers' suggestion that those determinations can be made without examination of "any of the underlying facts of the separate state court action[s]" is simply not credible given that those same factual issues are squarely in play in both this federal action and the overlapping state-court proceedings.

Finally, although its reasoning is elusive, Travelers would apparently have the Court decline to perform an *Ameritas* analysis because "the rights of Bagby, Mansfield and All South under the payment bond can be determined *without regard to the underlying facts of the case*. Here, the facts which will determine whether movants can make a claim against the payment bond are undisputed, inasmuch as none of the movants have a direct contract with Coastal Builders." (Doc. 52, at 9.)  This contention fails for two reasons.  First, irrespective of whether factual disputes do or do not exist, the fact remains that the identical legal issue (namely, whether Travelers is or is not obligated to pay the subcontractors pursuant to the Lighthouse Payment Bond) is presented in both the state-court litigation and this case.  That circumstance places this action squarely within the *Ameritas* framework.  Second, not surprisingly, Bagby, Mansfield and All-South vigorously dispute Travelers' purportedly "undisputed fact" that no direct contracts with Coastal exist, with certain of them even tendering exhibits that they contend support their position.[14]  Clearly, the question of whether those entities had direct contracts with Coastal is an ultimate issue of fact that cannot be decided at this preliminary stage, but must instead be reserved for summary judgment or trial in whichever court or courts retain jurisdiction over the dispute.  This Court therefore rejects Travelers' assertion that no *Ameritas* analysis should be performed because there are no genuine issues of fact as to whether the movants directly contracted with Coastal so as to be eligible to make claims on Travelers' Payment Bond.

   2. *Application of* Ameritas *Factors to Bagby, Mansfield, and All-South.*

Having determined that the *Ameritas* guideposts are in fact applicable, the Court now turns to a factor-by-factor examination to assess whether it is appropriate to exercise jurisdiction over Travelers' declaratory judgment action as to Bagby, Mansfield, and All-South.

---

[14] For example, these subcontractors contend that much of the work they performed on the Lighthouse project was done pursuant to the express instructions of, and with direct approval by, Coastal and that various change orders, applications for payment and correspondence among the parties are sufficient to create the "direct contract with [Coastal] ... to furnish labor, materials or equipment" (Lighthouse Payment Bond, § 15.1) that is required under the terms of the Payment Bond to render Travelers liable for the obligation.  Contrary to Travelers' suggestion, it appears highly implausible that the presence or absence of a direct contractual relationship between these entities and Coastal can be ascertained without "delv[ing] into or decid[ing] any underlying facts or circumstances concerning the contractual relationships" between or among the parties.  (Doc. 52, at 9.)

The first consideration is "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." *Ameritas*, 411 F.3d at 1331. This dispute concerns a surety's obligations on a payment bond issued in Alabama for an Alabama construction project and for sums owed in connection with work performed in Alabama. The legal issues presented arise exclusively under Alabama law, and the facts concern events transpiring in Alabama. Alabama clearly has a significant interest in having its state courts resolve such matters.[15]

Second, *Ameritas* counsels courts to consider "whether the judgment in the federal declaratory action would settle the controversy." 411 F.3d at 1331. Although the parties devote considerable ink to this topic, and the analysis differs depending on how the parameters of the "controversy" are defined, the Court answers this question in the negative. The "controversy" animating the state-court lawsuits is the nonpayment of Bagby, All-South, and Mansfield for work they performed on the Lighthouse project. In those state-court actions, the subcontractors seek reimbursement through any of several different mechanisms, including breach of contract claims against East Beach, lien claims against the Association and individual unit owners, and claims against Travelers under the Payment Bond. Viewed in its proper context, then, this federal declaratory judgment action captures only a portion of the controversy animating the underlying litigation. Regardless of whether this Court found that Bagby, All-South and Mansfield were or were not proper claimants under the Lighthouse Payment Bond, those state-court actions would need to proceed as to those subcontractors' related claims against East Beach, the Association and individual unit owners, inasmuch as those claims are not pending in

---

[15]     In arguing otherwise, Travelers emphasizes that "some" defendants in the state-court proceedings are residents of other states, that defendants in this case reside in four different states, and that the Lighthouse and San Carlos projects surely have a sizeable impact on interstate commerce, all of which give rise to a federal interest in adjudicating the dispute. Be that as it may, there can be no serious question that Alabama has a substantial interest in deciding the application of Alabama law to payment bonds issued in Alabama relating to construction work performed in Alabama. Travelers incorrectly assumes that this factor justifies abstention only if there is no federal interest in the dispute, when in fact the *Ameritas* court framed it in terms of the "strength of the state's interest," not the existence or lack thereof of a federal interest. The Court therefore readily concludes that the first *Ameritas* guidepost favors abstention.

this forum and therefore will not be adjudicated herein.  Thus, if this Court heard Travelers' claims, then these subcontractors' claims seeking payment for work performed on the Lighthouse project would be split into two cases in two courts.  The resulting piecemeal litigation in multiple fora would be highly inefficient for judges and parties alike; therefore, this factor militates against the exercise of jurisdiction over the declaratory judgment action.[16]

Next, the Court considers "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue."  *Ameritas*, 411 F.3d at 1331.  Certainly, disposition of Travelers' claims against Bagby, All-South, and Mansfield in this federal action would provide clarification as to whether those subcontractors are eligible to recover their unpaid charges through the Lighthouse Payment Bond; however, this benefit is mitigated by the fact that the Baldwin County Circuit Court is fully equipped to resolve these questions and provide this clarification as well, while simultaneously resolving the broader dispute over these subcontractors' nonpayment.  The ability to clarify the legal relationships involved is in no way unique to this federal declaratory action.

The fourth guidepost to be considered in deciding whether to hear the challenged federal declaratory judgment claims is "whether the declaratory remedy is being used merely for the

---

[16]     Travelers would define the "controversy" differently.  According to Travelers, the controversy is actually properly viewed as "the total scope of Travelers' liability under the Payment Bond" and "all Payment Bond issues and exposures" to any and all subcontractors on both the Lighthouse and San Carlos projects.  (Doc. 59, at 3.)  By taking this position, Travelers overlooks several important considerations.  In soldering together claims against nine defendants from two different projects, Travelers has artificially linked claims concerning unrelated Payment Bonds as to which different factual and legal issues almost certainly will arise.  These are different controversies joined in a single federal action.  More importantly, it does not appear that the Payment Bond issue can receive a global, across-the-board resolution through a single set of factual findings and legal conclusions, but that it instead will turn on a fact-specific inquiry on a subcontractor-by-subcontractor basis to determine the existence, nature and form of their dealings with Coastal in order to ascertain whether the requisite direct contractual relationship exists.  The likely necessity of such an individual-specific analysis greatly diminishes any efficiency gains from having that inquiry be conducted by a single court.  Finally, no matter how the Payment Bond issues are resolved in the declaratory judgment action, the related claims of Bagby, All-South and Mansfield against East Beach, the Association and the individual condominium owners would remain in play in the state-court litigation, creating just the kind of piecemeal disposition of disputes in differing fora upon which federal courts have frowned.

purpose of 'procedural fencing' - that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." *Ameritas*, 411 F.3d at 1331. When it filed the First Amended Complaint that alleged, for the first time, declaratory judgment claims against the subcontractors on the Lighthouse and San Carlos Payment Bonds, Travelers had already been sued in state court on the Lighthouse Payment Bond by both Bagby and Mansfield, in actions that were not removable to federal court because they neither presented federal questions nor satisfied the prerequisite of complete diversity. Rather than litigating Bagby's and Mansfield's already-pending claims against it under the Payment Bond in Baldwin County Circuit Court, Travelers chose to transform this dispute into a war on two fronts by initiating a separate lawsuit in federal court against Bagby, Mansfield and others in an effort to secure a federal hearing on the Payment Bond question.[17] Despite Travelers' protestations to the contrary, this sequence of events gives rise to at least the pervasive appearance that Travelers engaged in procedural fencing as to Bagby and Mansfield by initiating duplicative federal claims against them after it had already been sued by those subcontractors on precisely the same issue in state court in actions that were not removable to federal court.[18]

The fifth *Ameritas* factor is "whether the use of a declaratory action would increase the

---

[17]   To complicate matters further, Travelers elected to combine claims against largely unrelated sets of subcontractors on two unrelated Payment Bonds for two unrelated condominium projects in a single federal declaratory judgment action. Travelers has never explained its reasoning for so doing, and such unrelated claims are certainly subject to severance under Rule 42(b), Fed.R.Civ.P., given the apparent inefficiencies of litigating the eligibility of two different sets of subcontractors for two different Payment Bonds for two different construction projects within the same declaratory judgment action.

[18]   The same does not hold true with respect to defendant All-South. In its brief, All-South maintains that Travelers is guilty of procedural fencing because, after the filing of the *Lighthouse* Action in state court by the Association, Travelers initiated this declaratory judgment action in federal court in an attempt to circumvent the non-removable *Lighthouse* Action. (Doc. 34, at 3.) This chronology is incorrect. The First Amended Complaint in this action, which set forth declaratory judgment claims against All-South and others, was filed on May 30, 2007, fully 15 days before the *Lighthouse* Action was filed and nearly two months before All-South initiated third-party claims against Travelers in the *Lighthouse* Action for payment on the Lighthouse Payment Bond. There is no indication in the record that All-South had threatened Travelers with such claims prior to May 30, 2007, and therefore no reason to believe that Travelers' suit against All-South herein was a pre-emptive strike to fulfill a procedural fencing objective.

-15-

friction between our federal and state courts and improperly encroach on state jurisdiction." 411 F.3d at 1331. It unquestionably would. As already discussed *supra*, the parties have squarely presented to the Baldwin County Circuit Court the questions of whether Bagby, All-South, and Mansfield are eligible to make claims on the Lighthouse Payment Bond for their unpaid invoices on the Lighthouse project. Moreover, the state court has been tasked with deciding those issues in the broader context of discerning whether those subcontractors' unpaid bills should properly be the responsibility of East Beach, the Association, Travelers, or someone else. For this Court to swoop in and take a slice (but only a slice) of that dispute away from the state court via Travelers' declaratory judgment action would undoubtedly create friction and unnecessary encroachment on the state-court proceedings. If this Court were to decide the declaratory judgment issues before the state-court actions went to trial, then the federal ruling would almost certainly trammel the state court's ability to decide independently the broader dispute in the proceedings before it.[19]

The sixth consideration is "whether there is an alternative remedy that is better or more effective." *Ameritas*, 411 F.3d at 1331. As the Court sees it, the parties have postured these interwoven actions in such a manner that two imperfect scenarios are possible. In the first, the state court (in either consolidated or separate proceedings) would decide for each of Bagby, All-South and Mansfield which of several payment sources is responsible for paying its unpaid invoices for the Lighthouse project. This outcome would be efficient and internally consistent in the sense that all of Bagby's, All-South's and Mansfield's claims pertaining to their unpaid invoices on the Lighthouse project would be resolved in singular, integrated state-court

---

[19] For example, suppose this Court were to rule that Bagby did not have a "direct contract" with Coastal and was therefore ineligible to make a claim on the Payment Bond. That ruling would in turn limit the state court's options in deciding the *Bagby* Action by reducing the three possible sources of payment (Travelers, East Beach, the Association/owners) to two. Likewise, suppose this Court were to find that Bagby <u>did</u> have a "direct contract" with Coastal, such that Travelers is liable, but the state court were of the opinion that Bagby had contracted exclusively with East Beach, and not Coastal, such that East Beach should be liable. The resulting federal court incursions on and entanglements in the state-court proceedings are precisely the sort of concerns that *Ameritas* and other federal courts have admonished district courts scrupulously to avoid in assessing whether they ought to exercise jurisdiction over a declaratory judgment action.

proceedings.  Yet, this approach would not be ideal because: (a) unless the state-court proceedings were consolidated (which may or may not have happened, as the parties simply have not informed the undersigned), these similar inquiries for Bagby, All-South and Mansfield would be decided in three separate proceedings, with associated inefficiencies; and (b) regardless of the state-court outcome, Travelers would be left not knowing whether it has Payment Bond obligations to A-1, Alpha, Jennings, Thrasher and Triple A, so those issues would still be litigated in federal court in this declaratory judgment action, thereby forcing Travelers simultaneously to defend against the state-court claims brought by Bagby, All-South and Mansfield and to prosecute analogous federal proceedings against the other subcontractors.

The second, alternative scenario is that Travelers could litigate its Payment Bond obligations to all eight subcontractors (plus East Beach) in a single federal declaratory judgment action, even as Bagby's, All-South's and Mansfield's duplicative litigation churns away in state court.  This approach has the desirable feature (at least, from Travelers' standpoint) of allowing Travelers to litigate the Payment Bond issues globally in this proceeding.  However, those efficiency benefits are overwhelmed by the following countervailing considerations: (a) partially redundant litigation would still be underway in state court as to Bagby, All-South and Mansfield, forcing a race to *res judicata* in the parallel proceedings and effectively requiring Travelers, Bagby, All-South and Mansfield to fight the same war on two different fronts before two different judges; (b) disposition of the Payment Bond issues as to Bagby, All-South and Mansfield in federal court would not address their claims against alternative payment sources in state court, and could yield inconsistent results if the findings of fact and conclusions of law on the interrelated questions of which payment source(s) are responsible for those subcontractors' unpaid bills on the Lighthouse project are answered differently in the state and federal litigation; (c) because of the highly fact-specific nature of the determination of whether a given subcontractor directly contracted with Coastal so as to be eligible to make a claim on the Payment Bond, the efficiency benefit to deciding all the Payment Bond claims in a single proceeding is negligible because eight discrete sets of facts would have to be found concerning the contractual relationships and dealings between each of the eight subcontractors and the general contractor and/or the developer; (d) any efficiency benefit to deciding all Payment Bond claims in a single global proceeding is undermined by Travelers' decision to join two sets of

-17-

claims involving two different, unrelated bonds and two different, unrelated construction projects and two largely different sets of subcontractors in a single declaratory judgment action; and (e) Travelers has failed to prosecute its claims in this proceeding against two of those eight subcontractors, inasmuch as it has failed to seek default or default judgment against A-1 and Alpha in the more than four months since serving them with process, despite the fact that neither has appeared in these proceedings, such that it is questionable whether this action will be all-inclusive as to all subcontractors.

Considering these two imperfect alternatives, the undersigned is of the opinion that the "better or more effective" path is to allow Bagby, All-South and Mansfield to litigate their claims for uncompensated work on the Lighthouse project in integrated state-court proceedings against all the possible funding sources, without federal court interference and duplication. While Travelers might prefer to have all of the San Carlos and Lighthouse Payment Bond issues litigated in a single proceeding, the eight-part factual findings that such a process would entail can be readily split among multiple actions with minimal (if any) loss in efficiency or risk of inconsistent determinations.[20] To require Bagby, All-South and Mansfield to split their interrelated payment claims between state and federal courts would exact a much higher cost in terms of efficiency, dislocation, duplication and friction. In light of this determination, the Court finds that the alternative remedy of allowing Bagby, All-South and Mansfield to pursue integrated claims for payment against Travelers and others in Baldwin County Circuit Court is unequivocally better or more effective than allowing Travelers to sue eight subcontractors and one developer in a single declaratory judgment proceeding to decide the Payment Bond issues

---

[20] An example may help to illustrate the point. Two of the eight subcontractor defendants in this action are Bagby (which has also filed a state-court action) and Triple A (which has not). If this Court makes findings of fact as to whether Triple A did or did not directly contract with Coastal so as to be eligible to make a claim on the Lighthouse Payment Bond issued by Travelers, that determination would have no bearing on whether Bagby did or did not directly contract with Coastal. Simply put, the course of dealing, negotiations and contractual relationships that Bagby may have had with Coastal are in all likelihood completely separate and distinct from those that Triple A had with Coastal. There is therefore no loss in efficiency, and no risk of inconsistent determinations, by having this Court decide the "direct contract" question with respect to Triple A, while a state court decides that question with respect to Bagby. The factual inquiry is distinctly different as to each of the two subcontractors.

globally, while the same issues are pending in state-court proceedings involving three of those subcontractors.  This guidepost therefore favors declining jurisdiction.

The seventh and eighth *Ameritas* guideposts are most effectively considered together, as they concern "whether the underlying factual issues are important to an informed resolution of the case" and "whether the state trial court is in a better position to evaluate those factual issues than is the federal court."  *Ameritas*, 411 F.3d at 1331.  As discussed *supra*, the question of whether a particular subcontractor is or is not covered under the Payment Bonds issued by Travelers hinges on a fact-specific inquiry as to whether that subcontractor directly contracted with Coastal.  That determination will require an in-depth study of the course of dealing, negotiations, correspondence and paperwork between the subcontractor and Coastal, as well as between the subcontractor and the developer.[21]  With respect to Bagby, All-South, and Mansfield, those specific factual issues are already pending before the Baldwin County Circuit Court, not only to assess Travelers' liability to those subcontractors but also to evaluate those subcontractors' claims against East Beach, the Association and Coastal.  Thus, the Court finds that these guideposts favor abstention because underlying factual issues are important to resolution of the claims between Travelers and Bagby, All-South, and Mansfield, and the state court is in better position to evaluate those facts than is this Court because those factual issues are already before the state court in addressing the various claims made by each of those three subcontractors for unpaid invoices on the Lighthouse project.  Rather than having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the Payment Bond claims.

---

[21]     In so concluding, the Court does not embrace Bagby's position that a determination of the Payment Bond issue requires "an indepth study of the facts relating to the work performed by Bagby & Russell on the Lighthouse Condominium project."  (Doc. 28, at 9.)  It is of no consequence for purposes of the Payment Bond issue precisely what work Bagby performed.  What is important, however, is how Bagby came to perform that work and what discussions, negotiations and agreements it had with Coastal and East Beach along the way.  Those underlying facts, which are also pending before the state court in the *Bagby* Action in connection with both Bagby's claims against Travelers and its claims against East Beach, are critical to an informed resolution of both Travelers' declaratory judgment claims against Bagby and Bagby's state-court claims against Travelers and East Beach.

Ninth and finally, the Eleventh Circuit counsels that courts should consider "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Ameritas*, 411 F.3d at 1331.  The subcontractors argue, and Travelers concedes, that this declaratory judgment action implicates exclusively Alabama legal issues and Alabama public policies, with no reference to federal common or statutory law.  Nonetheless, Travelers urges the Court to find that federal interests are implicated here because certain subcontractors are residents of different states and "construction is inherently a matter of interstate commerce."  (Doc. 52, at 16.)  The fact that a dispute under Alabama law concerning an Alabama construction project may involve contractors from different states and may implicate interstate commerce is a far cry from supporting a conclusion that "federal common or statutory law dictates a resolution of the declaratory judgment action."  Federal common or statutory law unquestionably do not dictate a federal resolution of every commercial dispute affecting interstate commerce; therefore, this guidepost also favors abstention.

Considering the *Ameritas* factors and all the surrounding facts and circumstances in their entirety, the Court in its discretion declines to exercise jurisdiction over Travelers' declaratory judgment causes of action against Bagby, All-South and Mansfield.  The identical issues are pending in state-court proceedings.  Travelers' claims raise exclusively Alabama legal issues relating to an Alabama construction project, such that Alabama courts have a considerable interest in resolving the dispute.  The circumstances and timing of Travelers' filing suggest that some measure of procedural fencing was involved in that it was knowingly duplicating claims previously brought against it in state court that were not removable to federal court.  Most importantly, the interests of efficiency, comity, federalism, non-interference with state-court litigation, and avoidance of inconsistent results would all be served by allowing Bagby, All-South and Mansfield to pursue their claims for nonpayment against the developer, the owner, the general contractor and the surety in integrated state-court proceedings, rather than by pursuing a two-tracked approach where a slice of the state-court proceedings was also being litigated contemporaneously by a federal court.  These considerations are heightened by Travelers' decision to combine declaratory judgment claims concerning two different Payment Bonds on two different construction projects with two different sets of subcontractors into a single federal

proceeding.[22]  For all of these reasons, the Court finds that it is appropriate to abstain from exercising jurisdiction over Travelers' declaratory judgment claims against Bagby, All-South and Mansfield in the face of parallel state-court litigation.

> 3.    *Remedy.*

Having determined that *Wilton* discretion is in play, and having applied the *Ameritas* guideposts to conclude that abstention will promote the interests of practicality, comity and efficient, wise administration of justice, the Court now must decide whether to dismiss or stay the claims against Bagby, All-South and Mansfield.  The undersigned has previously opined that dismissal, rather than a stay, is appropriate where: (1) there is neither evidence nor suggestion that a time bar might thwart the plaintiff's attempt to bring a declaratory judgment action if the state case, for any reason, fails to resolve the matter in controversy; and (2) granting a stay might create incentives for forum-shopping and piecemeal litigation, as the plaintiff might seek to derail litigation of the Payment Bond claims in the state court action in hopes of litigating those matters in federal court following the lifting of the stay.  *See Rolison*, 434 F. Supp.2d at 1246. Both considerations are present here.  Accordingly, in the absence of countervailing argument by the parties, which they have not articulated, Travelers' claims against Bagby, All-South and Mansfield will be dismissed, rather than stayed.

---

[22]    That said, the Court understands that Travelers would prefer to have all of the Payment Bond issues be litigated in a single federal lawsuit to spare it the time and trouble of participating in multiple lawsuits that involve ancillary legal and factual issues, as well.  But that is not an option.  The fact of the matter is that Travelers has been sued on Payment Bond issues by several subcontractors in the Baldwin County Circuit Court.  Those claims will remain pending regardless of whether this Court elects to hear the declaratory judgment claims involving those subcontractors.  The question, then, is whether it is more desirable for the Payment Bond claims of Bagby, All-South and Mansfield to be litigated contemporaneously in two different fora than it would be for this Court to decline to exercise jurisdiction over such claims, and defer to the state court.  The Court answers this question in the negative.  Moreover, given the fact-specific nature of the inquiry as to whether each subcontractor did or did not directly contract with Coastal so as to be eligible to make a claim on the Payment Bond, there appears to be no meaningful inefficiency associated with splitting the Payment Bond claims into different lawsuits for different subcontractors, inasmuch as the relevant factual and legal determinations would necessarily have to be made independently on a subcontractor-specific basis anyway.

## C.      Analysis of East Beach's Motion.

After the close of briefing on Bagby, All-South, and Mansfield's Motions to Dismiss, and some six weeks after it had been served with process, East Beach filed its Motion to Dismiss or Alternatively to Stay (doc. 64) that invokes *Wilton/Brillhart* abstention and follows the path blazed by its co-defendants.

But East Beach is not similarly situated to those co-defendants.  East Beach is the developer of the Lighthouse project, not a subcontractor.  East Beach's Motion and accompanying memorandum of law do not reference any claims between East Beach and Travelers that are pending in any of the state-court actions.  It is not entirely clear from the First Amended Complaint (doc. 7) in this action precisely what, if any, declaratory relief Travelers seeks as to East Beach.  However, a reasonable reading of that pleading is that Travelers seeks the following relief as to East Beach: (1) a declaration that Travelers has no obligation under the Lighthouse Payment Bond except as to those claims asserted by valid "Claimants"; and (2) a monetary judgment in the amount of $150,090.25 on the indemnity/contribution claim.  (Doc. 7, at 15.)  East Beach does not identify any parallel state-court litigation in which those issues are being litigated as between Travelers and East Beach.[23]  As such, East Beach has failed to satisfy its burden of showing the existence of parallel state-court litigation which encompasses the claims being litigated against it by Travelers in this declaratory judgment action.  Stated differently, by all appearances, Travelers' declaratory judgment claims against East Beach

---

[23]      In its brief, Travelers explains that East Beach has brought a cross-claim against Travelers in the *Bagby* Action alleging that "Travelers is due to pay the outstanding claims for unpaid items due on the construction of the Lighthouse Condominium."  (Doc. 66, at 3.)  It is unclear whether East Beach intended for this cross-claim to encompass anything other than the unpaid invoices claimed by Bagby; however, it appears that, under Rule 13(g) of the Alabama Rules of Civil Procedure, any attempt by East Beach to expand its cross-claim against Travelers to embrace other unpaid amounts owed to other subcontractors would be improper as a matter of Alabama law.  *See* Rule 13, Ala.R.Civ.P., Committee Comments on 1973 Adoption (explaining that a cross-claim "must either (1) arise out of the transaction or occurrence that is the subject matter of any existing claim or counterclaim in the suit, or (2) relate to any property that is the subject matter of the claimant").  Inasmuch as the *Bagby* Action apparently lacks any claims or counterclaims concerning the unpaid invoices for any subcontractor other than Bagby, East Beach's cross-claim against Travelers in that action would by all appearances be legally confined to the Bagby invoices as well.  East Beach does not contend otherwise.

-22-

appear to be unique to this federal lawsuit and not to be the subject of any claims by or between those two litigants in any of the Baldwin County Circuit Court litigation. In the absence of parallel state-court proceedings, *Wilton/Brillhart* abstention is inappropriate on its face. *See, e.g., Ameritas*, 411 F.3d at 1330 (explaining justification for abstention as being that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties") (citation omitted). As such abstention is the sole ground for East Beach's Motion to Dismiss or Alternatively to Stay, that Motion is properly **denied**.

That said, given the imprecision in the pleadings as to the specific declaratory relief that Travelers seeks against East Beach, the Court wishes to avoid any confusion or ambiguity as to the import of this ruling. It is <u>not</u> to be construed as an invitation for Travelers to litigate against East Beach claims concerning whether Bagby, All-South, and Mansfield are properly defined as "claimants" who are eligible to receive payment under the Lighthouse Payment Bond. For the reasons set forth in Section II.B.2., *supra*, this Court is abstaining from hearing any declaratory judgment claims concerning Bagby, All-South and Mansfield's eligibility under Travelers' Payment Bond. Travelers will not be permitted to litigate indirectly that which this Court has proscribed it from litigating directly. Indeed, it would make no sense, and would be counterproductive, for this Court to abstain from exercising jurisdiction over declaratory judgment claims against Bagby, All-South and Mansfield on the Payment Bond, only to exercise jurisdiction over declaratory judgment claims against East Beach encompassing precisely those issues. As it appears that the declaratory relief that Travelers seeks against East Beach is more general in nature (concerning the types of claims that will or will not be paid under the Payment Bond), Travelers will be permitted to proceed with its request for declaratory relief against East Beach on those general matters, provided that the Court will abstain from any specific rulings as to whether Bagby, All-South and Mansfield are proper claimants under said Payment Bond.

## III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.   Defendant Bagby & Russell Electric Company, Inc.'s Motion to Sever and Dismiss or in the Alternative to Stay (doc. 28); Defendant All-South Subcontractors Co., Inc.'s Motion to Dismiss, or in the Alternative, Motion to

Stay (doc. 34); and Defendant Mansfield Industrial, Inc.'s Motion to Sever and Dismiss, or in the Alternative, Motion to Stay (doc. 51) are all **granted**.  All claims against Bagby, All-South, and Mansfield are **dismissed without prejudice** pursuant to *Wilton/Brillhart* abstention, to enable the parties to litigate those issues in the parallel action(s) pending in Baldwin County Circuit Court.  The Clerk's Office is directed to terminate Bagby, All-South and Mansfield as defendants in this action.

2.      Defendant East Beach Development, LLC's Motion to Dismiss or Alternatively to Stay (doc. 64) is **denied**.  East Beach is **ordered** to file its answer on or before **November 21, 2007**.

3.      Plaintiff's Motion for Oral Argument (doc. 60) is **denied**.

4.      This action will proceed as to Travelers' claims against East Beach, Thrasher, Jennings, A-1, Triple A, and Alpha, with the caveat that this Court will abstain from making any declarations as to whether Bagby, All-South or Mansfield are or are not proper claimants under the Lighthouse Payment Bond.

5.      Plaintiff is **ordered**, on or before **November 21, 2007**, to **show cause** why it has not sought entry of default and default judgment against defendants A-1 and Alpha for failure to answer or otherwise respond to the Complaint within the time frame provided by the Federal Rules of Civil Procedure.


DONE and ORDERED this 9th day of November, 2007.


s/ WILLIAM H. STEELE

UNITED STATES DISTRICT JUDGE